UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

     Plaintiff,

v.                             Case No. 11-20548

George Arthur Dodson, III,        Honorable Sean F. Cox

     Defendant.

_____/

## OPINION & ORDER DENYING DEFENDANT'S
## MOTION TO DISMISS SUPERSEDING INDICTMENT

On October 21, 2011, a federal grand jury returned a 151-count superseding indictment

charging Defendant George Dodson, III with various firearm-related crimes.  The matter is

currently before the Court on Dodson's motion to dismiss the superseding indictment.  The

parties have briefed the issues and the Court heard oral argument on January 30, 2012.  For the

reasons set forth below, the Court shall DENY Dodson's motion to dismiss the superseding

indictment.

## BACKGROUND

In March 2010, the FBI executed a search warrant at a property in Clayton, Michigan that

was associated with the "Hutaree" militia group.  While executing the search warrant, federal

agents recovered AR-15 assault rifles, normally a semi-automatic firearm, that had been

converted to fully automatic firearms with the use of Drop-In Auto Sears (DIASs).  A DIAS is a

device used to convert semi-automatic firearms into fully automatic firearms, or machineguns.

DIASs are federally regulated by the National Firearms Act and the Gun Control Act.

One of the DIASs recovered during the execution of the March 2010 search warrant was from SU-PRESS-ON, a Detroit, Michigan company that is wholly owned and operated by Dodson. Upon further investigation, federal agents discovered that Dodson advertised DIASs in a popular firearm magazine and offered DIASs for sale via mail order. Dodson, however, is not a licenced firearms dealer or manufacturer. In March 2011, an undercover officer purchased a DIAS from Dodson using the order form found in the magazine.

On August 16, 2011, ATF agents executed search warrants on Dodson's apartment, storage facilities, and vehicle. Upon executing the search warrants, ATF agents recovered DIASs, evidence that Dodson manufactured DIASs from his apartment, records relating to the sale of DIASs, hundreds of legal firearms, eight non-DIAS machineguns, and a firearm silencer.

On September 14, 2011, the ATF Firearm Enforcement Officer, Michael C. Powell, tested the DIASs, the suspected non-DIAS machineguns, and the silencer at the ATF's testing laboratory in West Virginia. Powell tested the DIASs on a semi-automatic rifle from the ATF's National Firearms Collection by removing the semi-automatic, fire-control components from the ATF rifle and installing five unregulated M-16 machinegun parts (a selector, trigger, disconnector, hammer, and bolt carrier). Powell then inserted the DIAS into the rifle and fired the rifle. The firearm discharged multiple rounds with a single pull of the trigger and Powell determined that the DIAS functioned as designed and met the statutory definition of a machinegun. Powell repeated this test on a "large representative sample of the forty DIASs found in Dodson's possession." (Def's Resp. at 3). Powell also determined that the suspected non-DIAS machineguns were, in fact, machineguns, and that the silencer, was, in fact, a silencer.

On October 21, 2011, a federal grand jury returned a 151-count superseding indictment charging Dodson with various firearm-related crimes. The indictment is accurately summarized by the government as follows:

- Counts 1-2 allege the unlawful transfer of a DIAS to an undercover law enforcement officer (this was the subject of the original indictment);

- Count 3 alleges the unlawful transfer of a DIAS;

- Counts 4-7 allege manufacturing and dealing in machineguns (the DIASs) and failing to register and pay the associated taxes necessary to manufacture and deal in firearms;

- Counts 8-127 allege three counts for 40 different DIASs possessed by Dodson; for each DIAS, there is an associated count for possessing a machinegun, failing to register the machinegun as required, and possessing a machinegun without a serial number;

- Counts 128-149 allege a variety of counts related to eight (8) other suspected machineguns found in Dodson's collection;

- Counts 150-151 allege one count for possession of an unregistered silencer and one count for possession of a silencer without a serial number.

(Gov's Br. at 3).

On December 18, 2011, Dodson moved to dismiss the first superseding indictment. (D.E. No. 32). The Government filed response brief on January 9, 2012. (D.E. No. 34).

On January 30, 2012, the Court heard oral argument on Dodson's motion to dismiss the first superseding indictment. The Court also granted Dodson leave to file a supplemental brief in support of his motion, which Dodson filed on February 5, 2012. (D.E. No. 36).

LEGAL STANDARD

A criminal defendant "shall [not] be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. A defendant shall also enjoy "the right ... to be informed of the nature and cause of the accusation."

U.S. Const. amend. VI.  Generally, a proper indictment "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).  Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1).

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b).  A district court may "make preliminary findings of fact necessary to decide questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate fact finder." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976).  A defense is "'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the offense." *United States v. Covington*, 395 U.S. 57, 60 (1969).

## ANALYSIS

In his motion, Dodson contends that the indictment must fail as a matter of law.  The first superseding indictment charges Dodson with illegally possessing, transferring, and manufacturing machineguns, in violation of 18 U.S.C. § 922 and 26 U.S.C. § 5861.  Dodson makes two arguments in support of his motion to dismiss the indictment.  First, Dodson contends that he did not sell or possess all the parts necessary to convert a semi-automatic firearm into a fully-automatic firearm, and that the DIASs at issue do not qualify as machineguns.  Second,

Dodson contends that the government has not provided evidence to establish that the DSASs seized by the government are machineguns manufactured after November 1, 1981 – an element that Dodson believes the government is required to prove.

I.     The DIASs Possessed By Dodson Are Considered Machineguns Under The National Firearms Act.

Dodson's first contention is essentially that DIASs, alone, do not qualify as machineguns under the National Firearms Act ("NFA").  The NFA defines a machinegun as:

> [A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, ***or combination of parts designed and intended, for use in converting a weapon into a machinegun***, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

Dodson asserts that the items seized by officers during the execution of the search warrants cannot, in and of themselves, produce a functioning firearm.  Dodson further asserts that, in order to produce a functioning machinegun, the government needed to use five M-16 parts that were not in Dodson's possession or among the items seized during the execution of the search warrants.  Thus, Dodson argues, "[t]he Government, in essence, manufactured the evidence and made it possible to produce a firearm or machinegun as defined by the statute. Without inclusion of these parts, there would be no such firearm."  (Def's Mtn. at 7).  Focusing on the language of § 5845, Dodson contends that a DIAS is not "designed to shoot," is not "readily restored to shoot," is not "the frame or receiver" of a machingun, and is not a "combination of parts from which a machinegun can be assembled."  *See* 26 U.S.C. § 5845.

The Government, however, contends that the DIASs qualify as machineguns because they are a "combination of parts designed and intended, for use in converting a weapon into a machinegun." This Court agrees.

The Government directs this Court to ATF Ruling 81-4, which discusses whether a DSAS is a machinegun as defined by 26 U.S.C. § 5845(b). The ruling provides:

> The Bureau of Alcohol, Tobacco and Firearms has examined an auto sear known by the various trade names including "AR15 Auto Sear," "Drop In Auto Sear," and "Auto Sear II," which consists of a sear mounting body, sear, return spring, and pivot pin. The Bureau finds that the single addition of this auto sear to certain AR15 type semiautomatic rifles, manufactured with M16 internal components already installed, will convert such rifles into machine guns.
>
> The National Firearms Act, 26 U.S.C. 5845(b) defines "machine gun" to include any combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.
>
> Held: The auto sear known by various trade names including "AR15 Auto Sear," "Drop In Auto Sear," and "Auto Sear II," is a combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. Consequently, the auto sear is a machine gun as defined by 26 U.S.C. 5845(b).

ATF Ruling 81-4.

As described by the ATF, a DIAS consists of four parts: (1) a mounting body; (2) a sear; (3) a return spring; and (4) a pivot pin. Dodson does not dispute that a DIAS is a combination of parts.

Dodson attacks every other possible definition of machinegun under the statute, but fails to address this most applicable definition of "machinegun" under § 5845. The statute does not state that a DIAS, alone, must be able to convert a semi-automatic weapon to a fully-automatic

weapon. Rather, the statute states that the term "machinegun" includes any "combination of parts designed and intended, ***for use*** in converting a weapon into a machinegun." 27 U.S.C. § 5845(b) (emphasis added). Based upon the plain, unambiguous language of the statute, a DIAS is a combination of parts designed and is intended for use in converting a semi-automatic firearm to a fully-automatic firearm. *See United States v. Cash*, 149 F.3d 706, 706-07 (7th Cir. 1998) ("Auto sears enable semi-automatic weapons to be used as fully automatic weapons, which means that auto sears themselves are defined as 'machineguns' by 26 U.S.C. § 5845(b)."); *See also United States v. Was*, 869 F.2d 34 (2nd Cir. 1989) (rejecting defendants' arguments that drop in auto sears cannot be deemed machineguns within the meaning of 27 U.S.C. § 5845(b)). The fact that certain M-16 parts were needed to convert an AR-15 rifle into a fully-automatic firearm is irrelevant to this particular definition of "machinegun" under § 5845(b). In fact, in Part II of Dodson's brief, he concedes that "the auto sear is a machinegun as defined by 26 U.S.C. 5845(b)." (Def's Br. at 10). Accordingly, Dodson's first argument fails.

II.     If Relevant, The Manufacture Date Of The DIASs Is A Question Of Fact For The Jury.

Second, Dodson argues that the "Government . . . has not produced any evidence the auto-sears were manufactured after November 1, 1981." (Def's Br. at 12). In support of this position, Dodson relies on the following excerpt from ATF Ruling 81-4:

> With respect to the machine gun classification of the auto sear under the National Firearms Act, pursuant to 26 U.S.C. 7805(b), this ruling will not be applied to auto sears manufactured before November 1, 1981. Accordingly, auto sears manufactured on or after November 1, 1981, will be subject to all of the provisions of the National Firearms Act and 27 C.F.R. Part 479.

(ATF Ruling 81-4). The statute specifically referenced in the ruling, 26 U.S.C. § 7805(b), relates to the application of internal revenue laws, and § 7805(b)(8) provides, "The Secretary

may prescribe the extent, if any, to which any ruling (including any judicial decision or any administrative determination other than by regulation) relating to the internal revenue laws shall be applied without retroactive effect."   26 U.S.C. § 7805(b)(8).

The Government asserts: (1) the November 1, 1981 date restriction does not apply; (2) Dodson, did, in fact, manufacture the DIASs recovered after November 1, 1981; and (3) the date(s) on which the DIASs were manufactured is a question of fact to be determined by the jury. Because the Court agrees that such an issue is a question of fact for a jury, the Court need not determine in this Opinion & Order whether Dodson, in fact, manufactured the DIASs after November 1, 1981, or if the date of manufacture is relevant to the charges against Dodson.

The indictment specifically alleges that Dodson possessed, transferred, manufactured, and dealt in firearms from 2006 to 2011, a period for which ATF Ruling 81-4 defined DIASs as machineguns.  Even if ATF Ruling 81-4 precludes enforcement of the charged crimes relating to DIASs manufactured prior to November 1, 1981, the date(s) on which the DIASs were produced is a question of fact for the jury.[1]  Any counts charging Dodson with the unlawful manufacture of machineguns, and even those that charge Dodson with failing to pay a special occupational tax, allege that he did so well after November 1, 1981.

Rather than attack the face of the indictment, Dodson attacks the sufficiency of the evidence, stating that the "Government . . . has not produced any evidence the auto-sears were manufactured after November 1, 1981."  (Def's Br. at 12).  According to the Federal Rules of

---

[1]In Dodson's supplemental brief, he attacks the allegations that the DIASs and firearms recovered are machineguns by asserting that their design, functionality, and components exclude them from the definition of "machinegun."  Again, whether the DIASs, firearms, or silencers are considered machineguns under the statute is an issue of fact more appropriately determined by a jury.

Criminal Procedure, the earliest point in which a defendant may challenge the sufficiency of the evidence is "[a]fter the government closes its evidence or after the close of all the evidence." FED. R. CRIM. P. 29(a). A determination by the Court that there is insufficient evidence to determine that the DIASs were manufactured after November 1, 1981 would invade the province of the ultimate fact finder – the jury. Thus, the government must be afforded the opportunity to present evidence in order to prove the facts that constitute the underlying crimes alleged. Accordingly, Dodson's second argument fails as well.

CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion to dismiss the superseding indictment (D.E. No. 32) is DENIED.

Prior to trial, the Court will re-visit the issue of whether the government is required to prove the date of manufacture of the DIASs as an element of any of the alleged crimes.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 21, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 21, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager